CONSUMERS LEAGUE OF NEVADA, AND KERMITT L. WATERS, APPELLANTS, v. SOUTHWEST GAS CORPORATION, A CALIFORNIA CORPORATION; PUBLIC SERVICE COMMISSION, STATE OF NEVADA; U. S. LIME; STAUFFER CHEMICAL COMPANY; TITANIUM METALS CORPORATION OF AMERICA; AMERICAN POTASH; NEVADA POWER COMPANY; PACIFIC ENGINEERING & PRODUCTION COMPANY OF NEVADA; JOHNS-MANVILLE PRODUCT COMPANY; STATE STOVE & MANUFACTURING COMPANY; FORT MOHAVE; CALIFORNIA PACIFIC UTILITIES COMPANY; AND KERR McGEE CHEMICAL CORPORATION, RESPONDENTS.

No. 9090

April 4, 1978                                        576 P.2d 737

*Kermitt L. Waters,* Las Vegas, for Appellant Consumers League of Nevada.

*R. Paul Sorenson* and *Harry E. Claiborne,* Las Vegas, for Appellant Kermitt L. Waters.

*Guild, Hagen & Clark,* Reno; *Charles H. McCrea, Darrell L. Clark,* and *Constance L. Howard,* Las Vegas, for Respondent Southwest Gas Corporation.

*M. Gene Matteucci,* Las Vegas, for Respondent Nevada Power Company.

*Robert List,* Attorney General, and *George M. Keele,* Deputy Attorney General, Carson City, for Respondent Public Service Commission.

*Laxalt, Berry & Allison,* Carson City, for Respondent California Pacific Utilities Company.

*Galane & Tingey and Jones, Jones, Bell, Close & Brown,* Las Vegas, for all other Respondents.

*Cromer, Barker & Michaelson,* Las Vegas, Amicus Curiae.

## OPINION

By the Court, SMART, D.J.:[1]

This interlocutory appeal, which is permitted by virtue of an

---

[1]The Governor, pursuant to Article 6, § 4 of the Nevada Constitutuon, designated the Honorable Stanley A. Smart, Judge of the Third Judicial District,

NRCP 54(b) determination, is from an order granting partial summary judgment in favor of Southwest Gas Corporation.

On January 14, 1976, the Public Service Commission ordered Southwest Gas to refund substantial sums of money to its customers. This order was entered after hearings before the Commission concerning the disposition of refunds the Federal Power Commission ordered paid to Southwest Gas by its gas supplier, El Paso Natural Gas Company.

On February 3, 1976, Kermitt L. Waters filed a complaint against Southwest Gas alleging that he had been employed in 1971 by the Consumers League of Nevada to institute proceedings before the Commission to compel Southwest Gas to pass along to its customers the approximate $2,000,000 in refunds received from El Paso; that his activities caused the hearings by the Commission which resulted in the order of January 14, 1976; and that he was entitled to an attorney's fee from the "common fund" thus created. The complaint was amended and, finally, on February 25, 1976, a supplemental complaint was filed by the Consumers League against the Commission, Southwest Gas, and various intervenors in the proceedings before the Commission. The supplemental complaint, which requested that the action be treated as a class action under NRCP 23 and prayed for declaratory and injunctive relief, also sought an allowance of attorney's fees.

Subsequently, various motions were filed, including cross-motions for partial summary judgment on behalf of appellants and Southwest Gas. Following a hearing on June 30, 1976, the district court entered an order granting the motion of Southwest Gas for partial summary judgment.

In asking us to reverse, appellants contend that, as a matter of law, they are entitled to a portion of the monies to be refunded as an attorney's fee. The contention is rejected.

Southwest Gas contends our decision in City of Las Vegas v. Southwest Gas, 90 Nev. 178, 521 P.2d 1229 (1974), is dispositive of the issue. There, we affirmed an order dismissing an action wherein attorney's fees and costs were sought by an intervenor who had successfully opposed a rate increase application by Southwest Gas before the Public Service Commission. Appellants seek to distinguish that case on the ground that the intervenor's action in *City of Las Vegas* did not result in the creation of any fund, whereas here, the efforts of the appellants brought into existence a substantial fund from which attorney's fees could be allowed. The suggested distinction is not persuasive.

to sit in place of THE HONORABLE DAVID ZENOFF, who voluntarily disqualified himself in this case.

In *City of Las Vegas,* attorney's fees were sought for services rendered before the Commission which avoided the imposition of unjust and unreasonable rates on consumers. In this case, attorney's fees are sought for services rendered before the Commission which resulted in the refund of certain unjust and unreasonable rates already charged to consumers. If any distinction is to be drawn between these two situations, it would seem to be that the services rendered in *City of Las Vegas* were of more value and produced greater benefits than the services rendered in the present case because there, the services avoided unjust and unreasonable rates.

In essence, appellants argue we should depart from the rule announced in *City of Las Vegas* solely because here the money for payment of fees is more readily available. This argument does not commend itself to us as providing either a proper or an adequate basis for such departure.

Historically, Nevada has followed the general rule that attorney's fees may not be awarded in the absence of a statute, rule, or contract permitting such award. *See, e.g.,* Sun Realty v. District Court, 91 Nev. 774, 542 P.2d 1072 (1975); City of Las Vegas v. Southwest Gas, *supra;* Mariner v. Milisich, 45 Nev. 193, 200 P. 478 (1921); and Dixon v. District Court, 44 Nev. 98, 190 P. 352 (1920). Some courts have approved the so-called "common fund" doctrine as an exception to this general rule; indeed, a few jurisdictions have expanded it to include situations where a substantial benefit, either pecuniary or non-pecuniary, has been conferred upon a class of persons by the efforts of a representative of that class, even though no actual "fund" was created. *See, e.g.,* Mills v. Electric Auto-Lite, 396 U.S. 375 (1970); Virginia Hospital Ass'n v. Kenley, 74 F.R.D. 417 (E.D. Va. 1977); and Serrano v. Priest, 569 P.2d 1303 (Cal. 1977).

No doubt, a method could have been devised in *City of Las Vegas* to provide for the payment of the requested fees had we been persuaded that such fees were otherwise permissible under the law. However, our decision then, as now, rests upon far more fundamental principles than the existence or non-existence of a "fund."[2]

---

[2]In *City of Las Vegas,* appellant sought to sustain an award of fees on the basis of the "common fund" and the "quasi-common fund" theories, not on the basis of a "substantial benefit." Accordingly, it was only necessary for us to simply note the inapplicability of the "common fund" theory in the absence of such a "fund" and to the inapplicability of the "quasi-common fund" theory in the absence of the extenuating circumstances upon which that theory is based.

Our legislature has created a complete and comprehensive statutory scheme for the regulation of utility rates, *City of Las Vegas, supra,* and has vested performance of that function in the Public Service Commission. NRS Chapters 703 and 704. The Commission is charged with the duty of regulating the operation of utilities in conformity with the provisions of NRS Chapter 704. NRS 703.150. The attorney general is designated as counsel for the Commission in carrying out these duties. NRS 703.210. The Commission is granted plenary power over utility rates, NRS 704.100 to NRS 704.130, inclusive, and NRS 704.210, subject only to limited judicial review. NRS 704.540 to NRS 704.580, inclusive. It is unlawful for any public utility to charge an unjust or unreasonable rate. NRS 704.040(2).

This scheme protects the public utilities from confiscation and protects all classes of consumers from rates which are unjust, unreasonable, discriminatory, or preferential. If consumers, or any particular class of them, require additional legal representation in rate proceedings before the Commission, the legislature, not this court, should provide it. This, the legislature has declined to do.[3]

Application of the "common fund" theory, or the "substantial benefit" theory, in the context of this case, would not only constitute judicial intrusion into a legislative fuction, as we noted in *City of Las Vegas,* but would tend to undermine the entire legislative scheme. If attorney's fees were charged to consumers, either by additional charges to create a fund or by reductions in refunds ordered by the Commission, utility rates would be unjust and unreasonable. Similarly, if such fees were deducted from rates payable to the utilities, the rates would be confiscatory.[4]

Accordingly, we hold that in the absence of legislation specifically providing for attorney's fees, such fees cannot be

[3]During the 1977 session of the legislature, at least two bills were introduced for such purpose. A.B. 602 provided for reimbursement to counties and cities of expenses incurred, including attorney's fees, in intervening in proceedings before the Commission. It also required the Commission to establish a fund for payment of these expenses. S.B. 460 created the office of public counsel to "represent the interests of the people of this state with respect to all matters within the jurisdiction of the [C]ommission." Neither bill was passed.

[4]We realize, of course, that, in fixing any particular rate of return for utilities, the Commission operates within a "zone of reasonableness." However, once that "reasonable" rate has been fixed, permitting the utility to exceed it results in rates which are unjust and unreasonable and requiring the utility to fall below it results in confiscation.

awarded to an intervenor in a proceeding before the Commission under either the "common fund" or the " substantial benefit" theory.[5]

Affirmed.

BATJER, C. J., and MOWBRAY and THOMPSON, JJ., concur.

GUNDERSON, J., concurring:

I am persuaded that our brother Smart has ably set forth the law *as it presently exists. I therefore reluctantly concur.*

However, I am also persuaded that our Legislature should consider appropriate changes in our law. This suit marks the second time Mr. Waters has represented consumers in matters of substantial public concern. *See* City of Las Vegas v. Southwest Gas, 90 Nev. 178, 521 P.2d 1229, 1230 (1974). In each instance he has provided significant services to the taxpayers of this state, and has been unable to recover for his efforts. If the Legislature truly desires to keep utility rates just and reasonable, *see* NRS 704.040(2), then it should address and adequately resolve the question of how attorneys who protect consumers are to be paid.

---

[5]In so holding, we are mindful of cases such as Mountain States Tel. & T. Co. v. Public Utilities Com'n., 502 P.2d 945 (Colo. 1972), which allow an attorney's fee out of refunds ordered. We simply reject such cases as not compatible with our prior decisions and the statutes of this state.